UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ANEURY PERALTA,

                              Plaintiff,                              15-cv-4455 (PKC)

      -against-                                            OPINION
                                                                    AND ORDER

CITY OF NEW YORK et al.,

                              Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Aneury Peralta brings this action against the City of New York ("City") and Officers Steven Gliner, Shaun Tablante, and John Ferrara of the New York City Police Department asserting claims under 42 U.S.C. § 1983 for malicious prosecution and unlawful search and seizure, and common law claims for false arrest, malicious prosecution, and conversion. Defendants have moved for summary judgment. For the reasons that follow, the motion is granted in part and denied in part.

BACKGROUND

        The following facts are taken from materials submitted in connection with the present motion and are either undisputed or construed "in the light most favorable to the [plaintiff]." Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011).[1]

---

[1] Citations to a party's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein. Peralta objects to the use of his deposition testimony and that of Mario Peralta, Perla Peralta, and Petra Garcia on the ground that defendants never produced these transcripts to plaintiff for review. (Pl.'s 56.1 at 1; Doc 35.) Rule 30(e)(1), Fed. R. Civ. P., allows a deponent to review a transcript and propose changes in form or substance upon request before a deposition is completed. There is no showing that plaintiff requested to review his or any other deposition transcript before their completion, dooming his objection. Bricklayers Ins. and Welfare Fund v. LaSala, 12 cv 2314 (FB), 2018 WL 7053375, at *4 (E.D.N.Y. Nov. 15, 2018). "The failure of a party to request a copy of his own deposition transcript precludes his right to make changes to his transcript." Pacheco v. New York Presbyterian Hosp., 593 F. Supp. 2d 599, 605 n.1 (S.D.N.Y. 2009); see Dore v. Wormley, 690 F. Supp. 2d 176, 179

On May 6, 2011, Peralta was driving on 125th Street in Manhattan with his mother, sister, and brother in the car when he approached a truck that had been pulled over on the right-hand side of the road by Officer Gliner. (Defs.' 56.1 ¶¶1, 4; Doc 31; Pl.'s 56.1 ¶¶1, 4; Doc 35.) Officer Gliner was on the driver's side of the truck. (Defs.' 56.1 ¶5; Pl.'s 56.1 ¶5.)

What happens next is the heart of this dispute. According to defendants, the right side view mirror of Peralta's car struck Officer Gliner's left arm between his elbow and wrist, leaving Officer Gliner in severe pain. (Defs.' 56.1 ¶¶7, 12.) According to Peralta, the side view mirror did not make contact with any part of Officer Gliner's body. (Pl.'s 56.1 ¶¶9−10.)

Peralta continued driving and was pulled over by Officer Gliner on a scooter. (Defs.' 56.1 ¶¶13−15; Pl.'s 56.1 ¶¶13−15.) Officer Gliner told Peralta he was under arrest and informed him that he had hit Officer Gliner's arm with his car. (Defs.' 56.1 ¶¶16−17; Pl.'s 56.1 ¶¶16−17.) Sergeant Ferrara and Officer Tablante responded to a call for backup and arrived at the scene, where they were informed by Officer Gliner that he was struck by Peralta's vehicle while issuing a summons to another vehicle. (Defs.' 56.1 ¶¶19−21; Pl.'s 56.1 ¶¶19−21.) Officer Tablante, at the direction of Sergeant Ferrara, arrested Peralta and placed him in handcuffs in a patrol car. (Defs.' 56.1 ¶¶23−25; Pl.'s 56.1 ¶¶23−25.) Peralta was taken to the 25th Precinct, processed, and placed in custody until he was arraigned the following day around 4:00 p.m. on charges of assault in the second degree (New York Penal Law § 120.05(4)) and leaving the scene of an accident involving serious physical injury (New York Vehicle and Traffic Law ("VTL") § 600(2)(a)(F-SPI)). (Defs.' 56.1 ¶¶25, 34−35; Pl.'s 56.1 ¶¶25, 34−35; see Declaration of Kenechukwu Okoli Ex. B; Doc 34-2.) Officers Tablante and Gliner and Sergeant Ferrara

---

n.2 (S.D.N.Y. 2010). Moreover, the Court will consider the transcripts where, in addition to not requesting them for review, plaintiff has not argued that the transcripts are "inaccurate in any way." Tycoons Worldwide Grp. (Thailand) Pub. Co. v. JBL Supply Inc., 721 F. Supp. 2d 194, 200 (S.D.N.Y. 2010).

participated in filling out Peralta's arrest paperwork, and Officers Tablante and Gliner spoke with a prosecutor regarding Peralta's case. (Defs.' 56.1 ¶¶31−33; Pl.'s 56.1 ¶¶31−33.)

After the incident, Officer Gliner's arm was examined at a hospital, X-rayed, and splinted. (Defs.' 56.1 ¶29; Pl.'s 56.1 ¶29.) He missed several weeks of work after May 6, 2011 and had several appointments with NYPD Medical Division Clinics during that time. (Defs.' 56.1 ¶¶41−42; Pl.'s 56.1 ¶¶41−42.) Defendants contend that as a result of his injury, Gliner was unable to carry heavy objects, perform housework, or participate in sports, and he continued to experience numbness and shaking in his left hand. (Defs.' 56.1 ¶¶45−46.) Plaintiff denies Gliner's account of his injuries. (Pl.'s 56.1 ¶¶44−46.)

On July 26, 2011, the prosecutor moved to dismiss the felony charge of assault in the second degree and reduce the remaining felony charge to a misdemeanor charge of leaving the scene of an accident involving personal injury (VTL § 600.2(a)). (Defs.' 56.1 ¶36; Pl.'s 56.1 ¶36.) The sole remaining count was tried before a judge of the Criminal Court of the City of New York on January 31, 2013. Officers Tablante and Gliner and Sergeant Ferrara testified at the trial. On February 4, 2013 Peralta was acquitted. (Defs.' 56.1 ¶¶38−40; Pl.'s 56.1 ¶¶38−40.) He brought this suit in federal court on June 9, 2015 (Doc 1.)

DISCUSSION

    I.    <u>Legal Standard</u>

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law " and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 248 (1986). On a motion for summary judgment, the court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (quotation marks omitted).

The moving party bears the initial burden of demonstrating that no genuine factual dispute exists with respect to each material element of the claim. Vt. Teddy Bear Co. v. 1-800-Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). If the movant has met its burden, its opponent "must come forward with specific facts showing that there is a *genuine issue for trial*." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (quotations omitted). The nonmoving party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986).

A district court "must ask not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015). It is not appropriate for the Court to make credibility assessments or resolve conflicting versions of event presented. These are essential questions for a jury. Id.

   II.   The Claims for Unlawful Search and Seizure under Section 1983 and Common Law Claims Are Dismissed

Most claims in this case will be dismissed based on Peralta's abandonment or concession. Peralta concedes that the state law false arrest claim is time-barred. (Pl.'s Mem. at 4; Doc 36.)

Peralta's Memorandum in Opposition to Summary Judgment makes no arguments with respect to the claims for conversion, state law malicious prosecution, or unlawful search and

seizure under section 1983.  (See generally Doc 36.)  "Where abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended."  Jackson v. Fed. Exp., 766 F.3d 189, 196 (2d Cir. 2014); see Kovaco v. Rockbestos-Surprenant Cable Corp., 834 F.3d 128, 143−44 (2d Cir. 2016).  As the Second Circuit explained, summary judgment is "a particularly appropriate time for a non-movant party to decide whether to pursue or abandon some claims or defenses."  Jackson, 766 F.3d at 195.  Where a party has counsel, responds to each of movant's proposed undisputed facts, and argues in its opposition to summary judgment briefing that a material issue exists only with respect to some claims, a district court may properly infer abandonment of the remaining claims.  Id.  Peralta has counsel, has submitted a 56.1 Counterstatement, and has only argued in his brief that "the Court should deny the motion as it relates to federal malicious prosecution claims and qualified immunity."  (Pl.'s Mem. at 10.)  The Court finds the unargued claims abandoned.

Peralta's opposition brief contains a header stating "Plaintiff's Federal Claims for Unlawful Seizure or Malicious Prosecution Are Not Time-Barred."  (Pl.'s Mem. at 6 (emphasis added).)  Peralta makes no arguments in that section or anywhere else in his brief related to the unlawful search and seizure claim.  Nevertheless to avoid doubt the Court notes that, if not abandoned, Peralta's federal claim for unlawful search and seizure (i.e. false arrest or false imprisonment)[2] in violation of Peralta's Fourth Amendment rights is time-barred.  Section 1983 claims take the statute of limitations which the state provides for general or residential personal

---

[2] The Court construes Peralta's claim as a false arrest or false imprisonment claim under section 1983.  The Amended Complaint states that defendants violated Peralta's rights "by unlawful search and seizure of his person from May 6, 2011 until May 7, 2011, while he remained in police custody until Plaintiff was arraigned before a judge, and released at about 4 P.M." (Am. Compl. ¶47; Doc 3.)  False arrest is considered a kind of false imprisonment "and the claims are analyzed in identical fashion."  Mitchell v. Home, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005); see Smith v. Flynn, 16 cv 9242 (NSR), 2018 WL 3946453, at *5 (S.D.N.Y. Aug. 16, 2018) (similar).

injury torts. Wallace v. Kato, 549 U.S. 384, 387 (2007); Owens v. Okure, 488 U.S. 235, 249−50 (1989). For New York, this period is three years. Owens, 488 U.S. at 251; N.Y. C.P.L.R. § 214. However, the question of when the limitations period begins to accrue on a section 1983 claim is a question of federal law. Wallace, 549 U.S. at 388. Peralta's false imprisonment claim began to accrue when he received "legal process," here, when he was "arraigned on charges" on May 7, 2011. Id. at 389; see Am. Compl. ¶47; Doc 3.[3] The statute of limitations to bring the false imprisonment claim expired on May 7, 2014, over a year before Peralta initiated this action on June 9, 2015 (Doc 1.)

Accordingly, Peralta's claims for unlawful search and seizure under section 1983, state law malicious prosecution and false arrest claims, and conversion claim are dismissed.

### III. The Section 1983 Malicious Prosecution Claims Are Dismissed In Part

Claims for malicious prosecution under section 1983 are "substantially the same as claims for malicious prosecution under state law." Lanning v. City of Glen Falls, 809 F.3d 19, 25 (2d Cir. 2018) (internal quotation marks and citation omitted). "[F]ederal law defines the elements" of a section 1983 malicious prosecution claim, while state tort law serves "as a source of persuasive authority" in "defining these elements." Id. "To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for

---

[3] The Complaint contains no allegation that Peralta was searched while in custody. If the "unlawful search" is construed to be separate claim, it too would have begun to accrue on May 6 or May 7, 2011 and have since expired. See Rivera v. City of New York, 16 cv 9709 (GHW), 2019 WL 252019, at *4 (S.D.N.Y. Jan. 17, 2019) (stating unlawful search claim accrues at the time of the search).

defendant's actions." Manganiello v. City of New York, 612 F.3d 149, 161 (2d. Cir. 2010) (internal quotation marks and citation omitted).

Defendants argue that Peralta's malicious prosecution claims should be dismissed for two reasons. First, they argue that claims for malicious prosecution on the felony charges of assault in the second degree and leaving the scene of an accident involving serious physical injury are time-barred because more than three years have passed since those charges were dismissed or reduced. (Defs.' Mem. at 11−12; Doc 30.) Second, they argue a claim based on the misdemeanor charge should be dismissed because the officers had probable cause to arrest or, in the alternative, the officers are entitled to the defense of qualified immunity. (Id. at 14−24.) The Court addresses these issues below.

### A. The Claim for Malicious Prosecution on the Felony Charges is Not Time Barred

"In malicious prosecution suits under section 1983, the statute of limitations begins to run when the prosecution terminates in the plaintiff's favor." Spak v. Phillips, 857 F.3d 458, 462 (2d Cir. 2017) (alterations and quotations omitted).[4] Favorable termination is "a prerequisite to commencement of the action," designed to "ensure against inconsistent judgments" and "permit a finding that probable cause was lacking." Janetka v. Dabe, 892 F.2d 187, 189 (2d Cir. 1989).

On July 26, 2011, the prosecutor moved the state court to dismiss the assault in the second-degree charge, N.Y. Penal Law § 120.05(4), and to reduce the felony charge of leaving the scene of an accident to a misdemeanor. (Tr. of Calendar Call on July 26, 2011; Doc

---

[4] Favorable termination is both the standard used to define accrual for federal malicious prosecution claims and a substantive element of the state law tort claim. See Spak, 857 F.3d at 462. In Spak, the Second Circuit stated that what constitutes a favorable termination "may turn out to be the same in each context, but not necessarily so." Id. at 463. Because the Court for purposes of this motion is concerned only with the accrual standard, it does not consider what is required to fulfill the substantive element of favorable termination.

29-19; see Record of Court Action at D144; Doc 29-20.) The misdemeanor charge went to trial and resulted in an acquittal on February 4, 2013. The City argues any malicious prosecution claim based on the felony charges accrued on the date of dismissal or reduction and is therefore time barred.

A "favorable termination" does not occur until the "underlying criminal action is conclusively terminated." Murphy v. Lynn, 53 F.3d 547, 548 (2d Cir. 1995); see Spak, 857 F.3d at 464; Kossler v. Crisanti, 564 F.3d 181, 188 (3d Cir. 2009) (discussing the importance of the use of the term "proceeding" rather than "cause" or "charge" in the test for accrual); 4 Restatements (Second) of Torts § 899, Comment c (1977) ("A cause of action for malicious prosecution is complete when the prosecution is terminated in favor of the plaintiff."). The Second Circuit has stated that, "[s]o long as . . . the underlying indictment or criminal information has been vacated and cannot be revived, then the plaintiff has a justiciable claim for malicious prosecution." Spak, 857 F.3d at 464; see id. at 465 (evaluating termination based on claims "arising out of the same accusatory instrument"); Roman v. Comp USA, Inc., 832 N.Y.S.2d 270, 272 (2d Dep't 2007) (holding that where it is "not clear if the pertinent accusatory instrument has been dismissed in its entirety," "an essential element" of malicious prosecution "is absent" (internal alterations omitted)); W Page Keeton et al., Prosser & Keeton on Torts § 119 (5th ed. 1984) (finding favorable termination where action "ha[s] the effect of ending the

particular proceeding and requiring new process or other official action to commence a new prosecution").[5]

If the City established that the felony complaint was dismissed in full more than three years prior to plaintiff's filing of this suit and new process was initiated to bring the misdemeanor charge, its time bar arguments would succeed. But the City has not met its burden on summary judgment. In New York, a charge may be "reduced" by "replacing the felony complaint" with a newly-filed information or "converting it" to an information pursuant to N.Y. Crim. Proc. L. § 180.50(3). See 32 N.Y. Jur. 2d Crim. L.: Procedure § 1087. The record contains no information that the City filed a new accusatory instrument against Peralta. Instead the City states that the Court "allowed the prosecution to reduce the felony charge" and submits a Record of Court Action in support. (Doc 38 at 5; see Doc 29-19; Doc 29-20.) Without more, the reduction was the continuance of a single criminal proceeding. It was not until the Court acquitted Peralta of the misdemeanor charge in February 2013 that "the underlying indictment or criminal information [was] vacated" and gave rise to a cause of action for malicious prosecution under section 1983. Spak, 857 F.3d at 464. Peralta's malicious prosecution claims under section 1983 are not time-barred.

---

[5] The City directs the court to Second Circuit cases instructing courts to conduct a "separate analysis" of charges in determining whether a termination is favorable. (Reply Br. at 3-7; Doc 38 (citing, inter alia, Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991); Janetka, 892 F.2d at 189-90)). This language refers to analyzing the favorability of a proceeding's termination when comparing charges that are dismissed in part in a defendant's favor such as, for instance, when an individual is acquitted on some charges but convicted on others. See, e.g., Posr, 944 F.2d at 100; Uboh v. Reno, 141 F.3d 1000, 1005 (11th Cir. 1998); DiBlasio v. City of New York, 102 F.3d 654, 658 (2d Cir. 1996); Janetka, 892 F.2d at 189; Carr v. City of New York, 11 cv 6982 (SAS), 2013 WL 1732343, at *3 (S.D.N.Y. Apr. 19, 2013). These cases are inapposite except to the extent they consider charges that have been resolved arising out of the same accusatory instrument.

B. Officer Tablante and Sergeant Ferrara But Not Officer Gliner Are Entitled to Summary Judgment on the Section 1983 Malicious Prosecution Claim

Defendants argue they are entitled to summary judgment because they had continuing probable cause to arrest and prosecute Peralta on the misdemeanor charge of leaving the scene of an accident involving personal injury, VTL § 600.2(a). "[C]ontinuing probable cause," or probable cause to arrest that is "not later nullified by information establishing the defendant's innocence," is a "complete defense to a constitutional claim of malicious prosecution." Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014) (internal quotation marks and citation omitted). Probable cause to arrest exists when an officer "has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed . . . a crime." Stansbury v. Wertman, 721 F.3d 84, 89 (2d Cir. 2013) (internal quotation marks and citation omitted). In the context of malicious prosecution, probable cause is "measured as of the time the judicial proceeding is commenced (e.g., the time of the arraignment)" and defendants "must have possessed probable cause as to each offense charged." Felix v. New York State Dep't of Corr. and Cmty. Supervision, 16 cv 7978 (CS), 2018 WL 3542859, at *9 (S.D.N.Y. July 23, 2018) (internal quotation marks and citation omitted). Probable cause "is a fluid standard that does not demand hard certainties or mechanistic inquiries; nor does it demand that an officer's good-faith belief that a suspect has committed or is committing a crime be correct or more likely true than false." Figueroa v. Mazza, 825 F.3d 89, 99 (2d Cir. 2016) (internal quotation marks and citation omitted).

"The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). If, instead, the question of whether an arresting

officer has probable cause is "predominantly factual in nature," it is "properly presented to the jury." Id. (quoting Moore v. Comesanas, 32 F.3d 670, 673 (2d Cir. 1994)).

VTL § 600.2(a) provides that a person "operating a motor vehicle who, knowing or having cause to know that personal injury has been caused to another person, due to an incident involving the motor vehicle operated by such person shall" before leaving the scene stop and show his or her license and insurance information.

i.   There Is a Material Dispute of Fact as to Gliner's Probable Cause

There is a material dispute as to the events that occurred prior to arrest and what Officer Gliner knew. Peralta testified unequivocally that no part of the car made contact with Gliner. (Peralta Dep. at 81 ll. 3−8; Doc 29-2.) Officer Tablante stated that Peralta told him at the station house that Peralta thought he had hit Officer Gliner's radio only. (Tablante Dep. at 102 ll. 15−18; Doc 29-16.) Peralta's brother, who was in the car at the time of the alleged incident, testified that he "heard a knock but . . . didn't know what it was" and that he did not say anything to plaintiff when he heard the sound. (Mario Peralta Dep. at 53 l. 16; Doc 29-3; see id. at 52 ll. 14−18.) He further testified that though he did not know the sound made when a car hits a human body, he did not believe the sound he heard was that of a car hitting a body. He believed instead that the car made contact with Gliner's walkie talkie. (Id. at 50 ll. 20−22, 53 ll. 16−22.) The only witness listed in the police report, Victor Paulino, testified that he did not see or hear anything like someone being struck by a vehicle. (Paulino Dep. at 74 l.17−75 l.6; Doc 34-5; see Doc 34-1 (police report).) Peralta notes that Gliner's medical report from St. Luke's diagnosed him with "[s]prains and strains of joints," injuries Peralta contends are inconsistent

with being struck by a vehicle and do not support Gliner's prolonged symptoms and leave of absence from work. (St. Luke's Records; Doc 29-12.)

On the other hand, Gliner testified that Peralta was driving when his right side mirror hit Gliner in the arm, the vehicle then slowed down and stopped, and eventually continued driving. (Gliner Dep. at 20 ll. 12−14, 21 ll. 14−18, 24 at ll. 2−3; Doc 29-4.) Defendants assert that the record shows Gliner suffered personal injury because he was provided a medical sling by an EMT that arrived on the scene and he was assigned to sick leave subsequent to the incident and missed several weeks of work. (Gliner Dep. at 31:19-32:13; Doc 29-4; NYPD Medical Records, Doc 29-9; Assignment to Limited Capacity Duty Sheet; Doc 29-11.)

It is not for the Court "to weigh the evidence" on summary judgment or engage in "credibility assessments." Weyant, 101 F.3d at 854. Defendants have offered no evidence that any facts came to light after the arrest to provide probable cause to prosecute Peralta independent of Officer Gliner's accusations. Accordingly, Gliner's motion for summary judgment is denied on the claim of malicious prosecution under VTL § 600.2(a).

If probable cause is not found to exist, the Court then considers whether a qualified immunity defense applies. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). A police officer has arguable probable cause "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Figueroa, 825 F.3d at 100 (internal quotation marks and citation omitted); see Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (characterizing qualified immunity as "arguable" probable cause). In the context of malicious prosecution,

"arguable probable cause" must exist "at the time the criminal proceeding commenced . . . ." Antic v. City of New York, 740 F. App'x 203, 205 (2d Cir. 2018); see Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994) (describing arraignment as the commencement of a criminal proceeding).

As noted, there is a genuine issue of material fact in dispute as to whether Peralta's vehicle came in contact with Officer Gliner's body. On this record, the Court cannot conclude as a matter of law that it was objectively reasonable for Gliner to believe probable cause existed or that officers of reasonable competence could disagree on whether probable cause to arrest or prosecute Peralta existed. If Peralta's version of events is believed, Officer Gliner's story of being struck in the arm by Peralta's vehicle is false, and qualified immunity does not protect "those who knowingly violate the law." Provost v. City of Newburgh, 262 F.3d 146, 160 (2d Cir. 2001) (internal quotation marks and citation omitted).

    ii.  There Is No Genuine Dispute that Tablante and Ferrara Had Continuing Probable Cause to Prosecute Peralta

Police officers are "entitled to rely on the allegations of fellow police officers." Martinez, 202 F.3d at 634. They are also entitled to rely on a victim's allegations that a crime has been committed. Id. Under the collective knowledge doctrine or fellow officer rule, "an arrest . . . is permissible where the actual arresting . . . officer lacks the specific information to form the basis for probable cause . . . but sufficient information to justify the arrest . . . was known by other law enforcement officials initiating or involved with the investigation." United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001). Arresting officers may rely on mistaken information "so long as it was reasonable . . . to rely on it." Manganiello, 612 F.3d at 161.

Ferrara and Tablante had probable cause to arrest Peralta.[6] Gliner informed Sergeant Ferrara that Peralta's car had hit him in the arm and that his left arm was in pain. (Defs.' 56.1 at ¶¶21−22; Pl.'s 56.1 at ¶¶21−22; see Ferrara Dep. at 9 ll. 19−25; Doc 29-5.) Ferrara then ordered Tablante to arrest Peralta. (Defs.' 56.1 at ¶23; Pl.'s 56.1 at ¶23.) Tablante observed that Gliner had tucked his hand inside his shirt, lending further support to Gliner's claim that he was injured. (Tablante Dep. at 14 ll. 22−24; Doc 29-6.) Similarly, Ferrara asked Gliner if he was in pain and Gliner said that he was. (Ferrara Dep. at 12 ll. 12−21; Doc 29-5.)

Peralta states that Ferrara and Tablante had reason to doubt Gliner's veracity because they "had some contact with Mr. Paulino," the only witness listed on the police report, who told a conflicting version of events. (Pl.'s Mem. at 9; Doc 36.) However, Peralta does not cite to any evidence of record that would show Tablante or Ferrara at the time of the arrest heard conflicting reports of what occurred. Paulino testified at trial that he did not remember what he said to other officers at the scene and that he could have said to an officer that he saw Peralta hit Gliner. (Paulino Testimony at 89 ll. 12−23; Doc 34-5.) Given that Tablante and Ferrara received information from the putative victim of the crime, who was also a police officer, and absent any

---

[6] Although defendants argue only with respect to the misdemeanor, a finding of continuing probable cause on the misdemeanor is sufficient to dismiss the malicious prosecution claim as to all charges. The Second Circuit has instructed that "we should not allow a finding of probable cause on [one] charge to foreclose a malicious prosecution cause of action on charges requiring different, and more culpable, behavior." Posr, 944 F.2d at 100; see id. (discussing analyzing charges separately when they "ar[i]se out of distinct facts"). Here, the felony and misdemeanor charges against plaintiff do not arise from distinct facts. The distinction between the charges arises from the resulting injury to the victim. See New York Penal Law § 120.05(4); V.T.L. § 600(2)(a)(F-SPI). In any event, Tablante and Ferrara's knowledge as to the level of injury would meet the 'serious physical injury' requirement giving rise to probable cause to arrest on the felony charges. See N.Y. Penal Law § 10.00(10) (defining "serious physical injury" as, inter alia, "protracted impairment of health").

evidence that the officers had reason to doubt Gliner's account, probable cause existed for them to arrest Peralta.

This probable cause continued through the arraignment. At the station house, Peralta told Tablante and Ferrara he believed he had hit something, which is not inconsistent with the version of events that led to Peralta's arrest. (Ferrara Dep. at 16 ll. 15−17; Doc 29-5; Tablante Testimony at 102 ll. 15−19; Doc 29-16.) Neither Tablante nor Ferrara learned of any other evidence post-arrest that would negate the earlier determination of probable cause. Betts, 751 F.3d at 82−83; see Cruz v. City of New York, 232 F. Supp. 3d 438, 457 (S.D.N.Y. 2017). Summary judgment will be granted on the malicious prosecution claim as to Tablante and Ferrara.

CONCLUSION

Defendants' motion for summary judgment on the common law claims for false arrest, malicious prosecution, and conversion, and section 1983 claim for unlawful search and seizure is GRANTED. The motion for summary judgment on the section 1983 malicious prosecution claim against Officer Gliner is DENIED. The motion for summary judgment on the section 1983 malicious prosecution claim against Officer Tablante and Sergeant Ferrara is GRANTED. The Clerk is requested to terminate the motion (Doc 28.)

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
　　　　July 18, 2019